UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF TEXAS (SHERMAN DIVISION)

UNITED STATES OF AMERICA,

Plaintiff,

v.

SEGUN ADEOYE,

Defendant.

Case No. 4:21-cr-00253-ALM-KPJ-13

Sherman, Texas
May 30, 2023
11:07 a.m.

TRANSCRIPT OF CONTINUATION OF DETENTION HEARING
BEFORE THE HONORABLE CHRISTINE A. NOWAK
UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For the Plaintiff: Heather Rattan, Esq.
U.S. Attorney's Office
101 E. Park Boulevard
Suite 500
Plano, TX 75074

For the Defendant: Cordt C. Akers, Esq.
The Akers Firm, PLLC
3401 Allen Parkway
Suite 101
Houston, TX 77019

Court Recorder: KNP

Transcription Service: Chris Hwang
Abba Reporting
PO Box 223282
Chantilly, Virginia 20153
(518) 302-6772

Proceedings recorded by electronic sound recording; transcript produced by transcription service.

**INDEX**

| | Page |
|---|---|
| Court's Ruling | 15 |
| Court's Ruling | 16 |

(Call to order at 11:07 a.m.)

THE COURT: All right, everybody at this time, we're going to be calling 421-CR-253. This is the United States of America v. Segun Adeoye.

If I can have an appearance on behalf of the Government, please?

MS. RATTAN: Good morning, Your Honor. Heather Rattan for the United States. Present and ready.

THE COURT: Thank you.

If I can have an appearance on behalf of Mr. Adeoye?

MR. AKERS: Cordt Akers on behalf of Segun Adeoye. We're ready.

THE COURT: Thank you.

Sir, go ahead and tell me your full name, please?

THE DEFENDANT: Segun Adeoye.

THE COURT: Thank you. All right, everybody, we're scheduled here today to conclude the detention hearing. I'm just going to re-cap and remind everybody of the procedural history that has brought us here today.

Quite some time ago, this Court held the hearing as it relates to Mr. Adeoye's detention. I ordered him released. That release was stayed, appealed to the district court. The district court reversed my decision and found Mr. Adeoye should be detained.

Subsequent to that, Mr. Akers filed a motion to

re-open the issue of detention. And Judge Johnson found that that motion to re-open should be granted.

She initially set this matter for hearing. And determining that the matter should be heard by the district court, she cancelled her hearing. The district court thereafter directed us to hold the detention hearing. And so, we proceeded in holding the same.

We had our initial hearing previously. At the conclusion of that hearing, the Court requested the parties to supplement the evidence before the Court for consideration. And we're convened here today for the purpose of hearing argument and for the Court to render its decision as it relates to the issue of detention.

So what we're going to do is right now is go ahead and proceed to argument. And Ms. Rattan, I'll hear from the Government first.

MS. RATTAN: Thank you, Your Honor. Of course, the Court knows in a situation like this, the question is is there new evidence or changed circumstances?

The new evidence or changed circumstances that the Defendant initially argued when he filed the motion were that he had actually served the sentence, so the circumstances were changed and he should be released because he was persisting in his plea of not guilty, but he had actually served the sentence that he would receive if he were convicted.

The other circumstance that the Defendant initially relied on was purportedly exculpatory letter provided in the jail, created drafted in the jail by a co-defendant with whom the Defendant is alleged to have conspired. So those were the initial new evidence or changed circumstances.

Then this Court as you've noted held a hearing. And what the new evidence is and what the changed circumstances are has kind of become a moving target.

But in the end, in the final analysis, it's our position that there aren't new circumstances. There are not new changed circumstances and that the Defendant should remain detained.

And of course, we rely on what we relied on initially. The Defendant is a flight risk. There's also evidence that the Defendant's participated in obstruction of justice. How did this letter get created in the jail? What's his relationship ongoing with this co-defendant who's now trying to exculpate him?

So it's our position that the Defendant should remain detained. The evidence really has not materially changed since the Defendant was originally detained by Judge Mazzant. So no changed circumstances. No new material evidence.

And then, of course, the Court asked us to file information about the phone contacts between the Defendant and the co-conspirator Edgal Iribhogbe. And I know you've reviewed

it. And we filed it.

There were over 100 attempted contacts and over 50 consummated contacts. And they were communicating on -- in multiple ways on a couple of different forums, which is a concern and is going to indicate at least we'll argue at trial that it shows that they were trying to be cryptic about their communications, but the bottom line is over 100 attempted contacts and over 50 actual contacts between the two co-conspirators.

The other thing that the Court asked for an update on was the Defendant's financial status. And of course, we filed that with the Court that there's a house valued at over $600,000 that sold. And I know that the Defense has provided information about that as well.

Apparently, the Defendant and people who he has a relationship with, who are not in custody, are now in a lawsuit against each other because it sounds like there's been some fraud involved with them taking money from him, which is what I take from the letter that counsel for the Defendant wrote.

And the reason I note that is because these are the people who the Defendant presented as being his solid, stable base when we originally had the detention hearing, saying that these are people who the Court could rely on to supervise him. These are people who are -- provide and show stability in terms of his life here.

So, financially, does he have access to money? Well, there's the sale of the house. He's provided information that he doesn't have access to the money, but there's also another interesting piece of information that was part of the original detention hearing.

And that is the $16,000 cash that was in the chip bag that was in the car with the documents associated with this Defendant. So what squirrelled away cash does he have? We don't know. Who among us has $16,000 of U.S. currency in a Doritos bag?

So what is his financial background? We've attempted to provide that to the Court, but there still would be a question about that as well.

The other thing in terms of the financial is that the financial picture of the Defendant also comes up in the context of obstruction because the information the Defendant originally provided to the Probation Officer in his initial bond report did not include all of his financial information.

It was only through an addendum after concerns were raised about whether the Defendant had accurately reported his financial picture.

And I think as I remember, it was about $500,000 that he neglected to mention to the probation officer. So obstruction is also a reason for detention under 3142(f)(2). And that -- the financial picture dovetails into whether he did

or would obstruct justice.

The other thing that has been kind of a moving target issue on whether there's new evidence are his international contacts.

At the original detention hearing, the Defendant had his mother, father, and I believe two siblings who were residing in Nigeria.

And now his father has died, but his mother and he has two siblings who are still living in Nigeria. And he has substantial contacts there.

He lived for 23 years in Nigeria. He got his medical degree in Nigeria. So certainly he has significant foundation there.

And I think the evidence at the original detention hearing was that he was sending bulk cash, a lot of money, not necessarily shipping currency, but sending a lot of money back to Nigeria.

And the part of the crime is that he sent over $40,000 to Japan. So, in conclusion, it's our position that there are not materially changed circumstances or new evidence and that the Defendant should remain detained. Thank you for listening, Your Honor and for reviewing the documents that we filed.

THE COURT: Thank you.

Mr. Akers, before you make your argument, I'm just

going to again remind everyone, Judge Johnson has already entered an order finding that the matter should be re-opened and that I'm considering the issue of detention.

So the Motion to Re-open has already been ruled upon. Judge Johnson has granted that. And so, we're not dealing with the circumstance or the standard that's applicable to the Motion to Re-open. We're dealing with the standard applicable to the issue of detention.

And so, with that in mind, Mr. Akers, I'll hear argument from you at this time.

MR. AKERS: If it please the Court. Thank you, Your Honor.

So what we've got here in essence is someone that has as the evidence shows been offered an opportunity to get out of custody and spend little to no more time in jail.

And he's persisted in his innocence as is his right, as he's responsibility if he does not want to defraud the Court and tell him -- tell the Court that he is guilty when he is in fact not.

Which begs the question in my mind and I would think in the Court's mind if he is going to run, he would need to be running from something.

The moving target, as we've seen, and I get that it's because we had a different prosecutor here last time, what we heard last time was that because this is a felony and Dr.

Adeoye is not a citizen, that he may in fact self-deport instead of getting deported after a trial.

To me, that doesn't hold water or make any sense to think that because we're worried that he might do something later -- because we know he might do something later, if he is in fact convicted, which I think is unlikely, that we're worried he might do it ahead of time.

And then, we heard a lot about the Government's dissertation of the new application of the Guidelines that they went through at the second hearing. And I think the Court's sees through that.

But what I want to talk about what we just heard is this obstruction stuff. If the Court recalls back in 2021 --

THE COURT: I don't think we need to address the obstruction stuff. Obstruction was not argued in connection with the initial hearing for detention.

In connection with the prior detention issue as well, the Government withdrew its argument as it relates to obstruction. I'm not considering obstruction here.

The only bases upon which the Government has moved prior to argument today and which is under consideration is (f)(2)(A).

(f)(2)(B) was not urged in connection with the initial motion for detention that we're considering at this juncture and it was withdrawn in connection with the original.

So there's no need to address obstruction. It's not part of this Court's consideration.

MR. AKERS: Understood. Well, let's go then to flight risk. First of all, in order to be a risk of flight, you need to know that you're fleeing from something.

I think I've -- and I apologize sometimes I got a little colorful. I asked the agent if you're running from a bear, and the bear disappears, are you going to keep running? That's kind of the analogy here.

And I think the Court understands my point, albeit you know, the sarcasm that for me is a little inappropriate, so I apologize.

THE COURT: I usually don't hear about bears in connection with detention hearing, so it was -- it is a novel argument.

MR. AKERS: I'm just a gigantic teenager if I'm being honest, but the reality is that there's a possibility here that he really has nothing to run from.

And the Court determined years ago that he has no -- frankly no risk of running that is unreasonable for the Court to understand his appearance at trial.

And that has only continued throughout -- in these last two years. It's only gotten better for the Defense. As Your Honor noted, he has less ties in Nigeria. He has significantly, and when I say significantly, Judge,

significantly less assets than when he started.

His financial situation is in ruin with home defaults and his medical practice completely being decimated and gone, and not to mention certain legal bills that his lawyer is not requesting from him because of this financial situation that has happened.

It's -- it is literally only changed for the better. It has literally only changed to show that Dr. Adeoye is a not a flight risk.

And finally, you know, as we all know in criminal cases in federal court, usually the evidence gets better for the Government, not worse.

Here, we have it's over time we've had Agent Mathews now talk about the tolling that they keep bringing up. At the original detention hearing, we heard that there were over 50 tolls between Dr. Adeoye and the co-defendant Edgal Iribhogbe, who is the only person that he has contact with in this whole case.

But if you really analyze those exhibits the Government submitted, you'd see that there's approximately 15 to 20 percent answered or returned calls. Everything else is Edgal Iribhogbe calling and calling and calling or texting and texting and texting without any semblance of a response.

And I'm happy the Court clued into that early on because I think that's important as well to show that this is

not a two-way conversation. This is a bugging and bugging and bugging.

The -- Ms. Rattan brings up the lawsuit going on with the home. The point of the lawsuit going on with the home is that Dr. Adeoye does not have access to those funds.

The allegation that these are the people that we were relying upon to show stability, that's completely false. This Carlene Williams (phonetic) person that was -- sold the house to is a completely new player in all of this.

Gertrude Florent, his power of attorney, and the Court's and Pre-trial's approved third-party custodian is doing her best to kind of shepherd his financial situation and do everything she can to help who she believes and as the Court heard is in fact a good person.

There's no reason to flee here. The Court can absolutely with certainty know that he will reasonably appear at -- this man has been in custody 20 months on a $43,000 loss amount.

And I think it's time for him to return home with third-party custodian with whatever conditions the Court deems appropriate because even if, even if he is convicted tomorrow, there is a substantial likelihood that he has already paid his debt. I think the -- there is no risk of flight. And Dr. Adeoye should be allowed on bond.

THE COURT: Thank you.

Ms. Rattan, anything further from the Government?

MS. RATTAN: No, thank you, Your Honor.

THE COURT: All right. All right, everyone, I'm going to go ahead and note again for purposes of the record Docket 683 is Judge Johnson's order. By and through that, she ordered that the matter of detention should be re-opened and that the Motion to Re-open should be granted.

And as a result, before this Court here today is the issue of detention. The Court has thoroughly reviewed Judge Mazzant's order reversing my initial release decision being Docket 403.

In connection with Judge Mazzant's reversal, he relied in part on two things, the Defendant's parents and two of his four siblings resided in Nigeria.

The Court will note at this juncture the evidence received is that Segun Adeoye's father has passed away and his number of contacts in Nigeria has been reduced as a result of that.

As well, Judge Mazzant found the evidence had been presented that he had access to substantial assets and cash. Based upon the evidence that's before me, I find that he -- it appears that he has significantly less assets and cash that he could use to flee.

As well, certainly, it has been argued that the Defendant is approaching time served after the likely

application of the Sentencing Guidelines.

I find each and every one of those circumstances differentiates and justifies a different decision made than Judge Mazzant.

In Docket 403, Judge Mazzant directed me to have the hearing today. And after reviewing exhaustively the reasons he felt that this Defendant should be detained, I do think that there is sufficient justification to find that there are differences from that time and that he should be released at this juncture.

So that would be this Court's determination that Mr. Adeoye should be released pending any trial.

I'm going to go ahead and hear from the parties at this juncture regarding the Court's decision.

MS. RATTAN: Thank you, Your Honor. We would object of course. And we would request that the Court stay its order to give us an opportunity to appeal to the district court.

THE COURT: All right, and so just to confirm, again, the Government is going to appeal the decision that I've made here today. You're asking for me to stay the order of release until such time as Judge Mazzant can hear this matter. Is that correct?

MS. RATTAN: Yes, thank you.

THE COURT: All right, and Mr. Akers, are you objecting?

MR. AKERS: I'd object to the Court -- their motion to stay the order. I understand that that's your general practice, so it's your courtroom, Judge.

THE COURT: All right, so I'm going to follow our usual practice just as we did in connection with the initial detention hearing. So I'm noting that the Government has appealed or intends to appeal. I'm going to grant the request to stay.

The Government will need to file its formal appeal. If I give you until Friday, Ms. Rattan, that's going to be June the 2nd at 5:00 p.m. Will that be sufficient?

MS. RATTAN: Yes, thank you.

THE COURT: All right, so we'll get that formal appeal on file no later than Friday, June 2nd. The Court stays its order of release to allow the Government an opportunity to file that Notice of Appeal.

We'll notify Judge Mazzant's chambers that you all are going to be requesting a hearing for him.

Is there anything further, Ms. Rattan?

MS. RATTAN: No, thank you.

THE COURT: Mr. Akers, sir?

MR. AKERS: It's my understanding the Court has issued an order that the transcript be prepared?

THE COURT: Well, I have not issued an order, but I am going to requesting that the transcript be prepared and be

provided to both the Government and Defense counsel both from the initial detention hearing, as well as argument today and this Court's ruling, so that Judge Mazzant will have that in his -- connection with his consideration.

And I guess to that end, let me go ahead and just further -- in connection with Docket 403, in particular, the Court's attention was drawn to and I reviewed exhaustively pages 6, 7, and then again page 9. And that is why the Court felt that there were enough differentiating circumstances to justify my determination to release here today.

Anything further, Mr. Akers?

MR. AKERS: No, Your Honor.

THE COURT: All right.

MR. AKERS: Thank you for your time.

THE COURT: All right, sir, I just want to advise you, I'm ordering you released here today, but I am the magistrate judge. And because the Government has appealed, we're going to send you before the district judge for a further hearing at this time before the district court. And so, you will be held in custody until such time as the district court is able to hear this matter, okay?

Ms. Rattan, anything further that we should put on the record at this time?

MS. RATTAN: No, thank you.

THE COURT: Mr. Akers?

MR. AKERS: No, Your Honor.

THE COURT: All right, thank you so much. Both of you are excused at this time.

(Proceedings concluded at 11:26 a.m.)

**CERTIFICATE**

I, Chris Hwang, court approved transcriber, certify that the foregoing is a correct transcript from the official electronic sound recording of the proceedings in the above-entitled matter.

__________________ June 3, 2023

Chris Hwang Date

Court Reporter